Carlos C. Alsina-Batista (CA Bar #327286)
Wajda Law Group, APC
6167 Bristol Parkway, Suite 200
Culver City, CA 90230
Tel. 888-213-0169
Email calsinabatista@wajdalawgroup.com

*Attorneys for Plaintiff, John Cavalieri*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| John Cavalieri,<br><br>　　Plaintiff,<br><br>　　v.<br><br>Frontpoint Security Solutions, LLC<br><br>　　Defendant. | **Case No.:**<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>**1. Violations of the Telephone Consumer Protection Act;**<br><br>**2. Violations of the Rosenthal Fair Debt Collection Practices Act** |

NOW COMES, Plaintiff, John Cavalieri ("Mr. Cavalieri"), by his undersigned attorney, and alleges the following against Defendant, Frontpoint Security Solutions, LLC ("Frontpoint"):

1.　Plaintiff brings this action on behalf of himself individually seeking damages and any other available legal or equitable remedies resulting from the

- 1 -

illegal actions of Defendant, in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act (hereinafter "TCPA"), 47 U.S.C. § 227 *et seq* and in violation of California's Rosenthal Fair Debt Collection Practices Act (hereinafter "RFDCPA"), Ca Civ. Code § 1788.17.

2.  The TCPA was legislated to prevent companies like Frontpoint Security Solutions, LLC from invading Americans' privacy by stopping abusive "robo-calls." The legislative history "described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255-56 (11th Cir. 2014).

3.  When enacting the Rosenthal Fair Debt Collection Practices Act, CA Civil Code § 1788.1(a)-(b), the California Legislature made the following findings and purpose declaration:

> (a)(1) The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.

(2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard or the rights of the other.

(b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts of practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

## JURISDICTION AND VENUE

4. Subject-matter jurisdiction of this Court arises under 28 U.S.C. § 1331 and 47 U.S.C. § 227(b)(3). See Mims v. Arrow Financial Services, LLC, 565 U.S. 368 (2012), holding that federal and state courts have concurrent jurisdiction over private suits arising under the TCPA. Supplemental jurisdiction over the state law claim exists pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C § 1391(b)(2) because Plaintiff resides within this district and a substantial part of the events or omissions giving rise to the herein claims occurred within this district.

## PARTIES

6. Plaintiff is a natural person residing in Placer County, in the town of Loomis, California.

7. Defendant is a limited liability company, doing business in the state of California, with its principal place of business located in McLean, Virginia.

8. Defendant provides consumer credit for the purchase of home security devices and associated home security services, and thereafter engages as collector of debt incurred for primarily for personal, family and household purposes. Defendant is a "person" as defined by 47 U.S.C. §153 (39).

9. At all times relevant to this Complaint, Defendant has acted through its agents, employees, officers, members, directors, heir, successors, assignees and assignors, principals, corporate affiliates, trustees, sureties, subrogees, representatives and insurers.

**FACTUAL ALLEGATIONS**

10. Defendant has been attempting to collect on a debt from credit that was extended primarily for personal, family, or household purposes, and was therefore a "consumer credit transaction" within the meaning of Calif. Civil Code § 1788.2 (e) of the Rosenthal Act.

11. In January 2019, Mr. Cavalieri contacted Defendant Frontpoint via email to request a quote for its advertised security system. Mr. Cavalieri did not sign any agreements with Frontpoint. Mr. Cavalieri was charged an amount close to $400 by credit card for Frontpoint's security system's installation and was persuaded by Frontpoint's representative to purchase it using his credit card. Unbeknownst to Mr. Cavalieri, Frontpoint also used his credit card to make a monthly charge of $44.95, as a monitoring fee for Frontpoint's security monitoring service.

12. Frontpoint never installed its security system in Mr. Cavalieri's residence and it was never activated. Mr. Cavalieri did not understand at the time he was sold the system that he would be charged a monthly monitoring fee even if he never installed or activated the system. Mr. Cavalieri did not realize for several months that Frontpoint was automatically charging his credit card $44.95 monthly for monitoring he has not getting, as the system was never installed by Frontpoint. When Mr. Cavalieri found out about the many monthly charges, he contacted Frontpoint to let them know he was neither getting, nor interested in getting the monitoring service and was told "tough, it's not Frontpoint's fault you didn't install the system and there is nothing we can do about the monthly monitoring fee."

13. Frontpoint knew at the time it persuaded Mr. Cavalieri to purchase Frontpoint, that he was a senior citizen and took advantage of that knowledge to Mr. Cavalieri's detriment. Frontpoint obtained Mr. Cavalieri's credit card information to charge approximately $720 in 16 monthly installments of $44.95 without Mr. Cavalier's knowledge. Additionally, Frontpoint charged Mr. Cavalieri approximately $400 for the equipment that was never installed.

14. When confronted with the unauthorized, unknown charges for an inexistent monitoring service, Frontpoint wrongfully told Mr. Cavalieri that he could not cancel his contract, and he would continue to be charged the $44.95 per month until January 31, 2022.

15. On or around May 15, 2020, Mr. Cavalieri, through an attorney, sent Frontpoint a demand to "cease and desist" from attempting to collect the disputed wrongful charges, and demanded that Frontpoint refund the monies it had charged him.

16. Rather than stopping direct collection efforts of the disputed debt, after May 15, 2020, Frontpoint increased collection efforts by calling Mr. Cavalieri with an auto-dialer approximately once a day. For such reason, on September 29, 2020, Mr. Cavalieri's attorney sent Frontpoint a second "cease and desist" letter, demanding that Frontpoint stop harassing Mr. Cavalieri with calls, texts and emails, and preserving various causes of action harassment in the collection of a disputed debt. On September 30, 2020, Frontpoint acknowledged receipt of the September 29, 2020 "cease and desist" letter.

17. After the first "Cease and Desist" letter sent approximately May 15, 2021, and even after acknowledgement of the second "Cease and Desist" letter received September 29, 2020, Defendant continued to contact Plaintiff on his cell phone, by calls, prerecorded messages and texts. Defendant also continued to email Plaintiff, demanding payment of the disputed debt.

18. Defendant placed collection calls to Plaintiff's cellular telephone at phone number (916) XXX-2518.

19. Defendant placed collection calls to Plaintiff from various phone numbers including, but not limited to (833) 408-8427 and (855) 705-5071.

20. On information and belief based on the considerable volume, timing and frequency of the calls, Defendant's calls were placed with an automatic telephone dialing system ("auto-dialer").

21. Defendant used an "automatic telephone dialing system", as defined by 47 U.S.C. § 227(a) (1) to place its telephone calls to Plaintiff seeking to collect a consumer debt allegedly owed by Plaintiff, John Cavalieri.

22. Defendant's calls were not for emergency purposes, as would be exempted from liability by 47 U.S.C. § 227(b)(1)(A).

23. Defendant's calls were placed to a telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls, either on a per-call or flat-fee basis, within the purview of 47 U.S.C. § 227(b)(1).

24. Defendant never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

25. Plaintiff revoked any consent, explicit, implied, or otherwise, to call his cellular telephone and/or to receive Defendant's calls using an automatic telephone dialing system in his conversation with Defendant's representative on

May 15, 2020. Plaintiff further revoked the aforementioned consent on September 29, 2020, a revocation of consent duly acknowledged by Defendant Frontpoint.

26. Despite Plaintiff's two requests to cease, Defendant placed autodialed calls to Plaintiff after May 15, 2020 and has continued to do so to this day.

27. Despite Plaintiff's request that Defendant cease placing automated collection calls to Plaintiff using an automatic telephone dialing system, Defendant continued to place at one hundred fifty-eight (158) telephone calls using an automatic telephone dialing system to Plaintiff's cellular telephone. The repeated contacts were made with the expectation that Plaintiff would succumb to the harassing behavior and ultimately make a payment, despite his dispute through an attorney of the claimed debt.

### FIRST CAUSE OF ACTION -NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT - 47 U.S.C. § 227

28. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-27.

29. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 et seq.

30. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B).

31. Plaintiff is also entitled to injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION - KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 et. seq.

32. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-27.

33. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 et seq.

34. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

35. Plaintiff is also entitled to injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION
## DEFENDANT VIOLATED THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
## CA CIV CODE § 1788.17

36. Plaintiff repeats and incorporates by reference into this cause of action

the allegations set forth above at Paragraphs 1-27.

37. At all relevant times, Defendant acted as a "debt collector" within the meaning of Cal. Civ. Code §1788.2(c).

38. Defendant violated the RFDCPA based on the following:

   a. Defendant violated the *§1788.17* of the RFDCPA by continuously failing to comply with the statutory regulations contained within the FDCPA, *15 U.S.C. § 1692 et seq*.

   b. Among others, Defendant continued to contact Plaintiff directly with the intent to unduly pressure him to pay a fraudulently induced debt for which he had not contracted, and which he had properly disputed through an attorney on May 15, 2020.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, John Cavalieri, respectfully requests judgment be entered against Defendant, Frontpoint Security Solutions, LLC, for the following:

## FIRST CAUSE OF ACTION

39. For statutory damages of $500.00 multiplied by the number of negligent violations of the TCPA alleged herein one hundred fifty-eight (158) for a total of one hundred fifty-four thousand dollars ($79,500.00); and

40. Actual damages and compensatory damages according to proof at time of trial.

## SECOND CAUSE OF ACTION

41. For statutory damages of $1,500.00 multiplied by the number of knowing and/or willful violations of TCPA alleged herein one hundred fifty-eight (158) for a total of four hundred sixty-two thousand dollars ($237,000.00); and,

42. Actual damages and compensatory damages according to proof at time of trial;

## THIRD CAUSE OF ACTION

43. Declaratory judgment that Defendant's conduct violated the Rosenthal Fair Debt Collection Practices Act;

44. Statutory damages of $1,000.00 pursuant to the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code §1788.30(b)*;

45. Litigation costs and reasonable attorneys' fees pursuant to the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ Code § 1788.30(c)*, and;

46. Actual damages and compensatory damages according to proof at time of trial.

## ON ALL CAUSES OF ACTION

47. Actual damages and compensatory damages according to proof at time of trial;

48. Costs and reasonable attorneys' fees, and;

49. Any other relief that this Honorable Court deems appropriate.

## JURY TRIAL DEMAND

50. Plaintiff demands a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED

Dated: October 11, 2021     By: */s/ Carlos C. Alsina-Batista*
                                 Carlos C. Alsina-Batista
                                 CA Bar No. 327286

*Attorney for Plaintiff, John Cavalieri*